[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 112.]

WARREN COUNTY BAR ASSOCIATION *v*. BUNCE.

[Cite as *Warren Cty. Bar Assn. v. Bunce*, 1998-Ohio-649.]

*Attorneys at law—Misconduct—One-year suspension with sanction stayed on conditions—Neglect of an entrusted legal matter.*

(No. 97-1277—Submitted December 2, 1997—Decided February 18, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-43.

_____

{¶ 1} On April 15, 1996, relator, Warren County Bar Association, filed a complaint with the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") against respondent, Jack P. Bunce of Lebanon, Ohio, Attorney Registration No. 0033229. The facts, as stipulated by the parties, giving rise to relator's complaint are summarized as follows.

{¶ 2} On September 16, 1994, June Herman (formerly known as June Schwartz), met with respondent to establish a guardianship for her father. At the meeting, certain documents were executed and Herman gave respondent a $550 retainer. In addition, respondent informed Herman that he would file the necessary documents with the court. Respondent provided Herman with a document regarding respondent's need for an expert evaluation of Herman's father. Respondent instructed Herman that the evaluation needed to be returned to him in order to facilitate the proceedings.

{¶ 3} On September 21, 1994, Herman's father died and on that date Herman returned the expert evaluation report to respondent. Respondent then advised Herman that she would need to sign new documents to initiate probate proceedings with respect to her father's will. Herman mentioned to respondent that it was her belief that her father did not have a will and that he never had executed

one. Herman signed several documents and she was told that they were necessary "to probate a will."

{¶ 4} Subsequently, over a period of thirteen to fourteen months, Herman telephoned respondent's office on at least twelve occasions to check on the status of her father's estate, and she left messages for respondent to return her calls. On each occasion, Herman spoke with respondent's secretary. Herman was told by respondent's secretary that she needed to schedule an appointment. Respondent did not return any of Herman's telephone calls. Herman also personally appeared at respondent's office on three or four occasions to check on the status of the case and was told by respondent's secretary that respondent was "waiting on a court date." Herman was also told that "it takes time to get through the court system."

{¶ 5} On November 20, 1995, Herman went to the Warren County Probate Court and learned that no documents had ever been filed with the court with respect to the death of her father. Herman then went to respondent's office to inform him of what she had learned. Herman, again, spoke only with respondent's secretary and was told that there "had to be some mix up" and that respondent would be out of the office for four to five days. Two days later, Herman hired new counsel to handle her father's estate. She sent a letter to respondent requesting that he return the $550 retainer to her. Respondent did not respond to Herman's request to return the retainer. Thereafter, Herman filed, with relator, a "request for investigation" regarding respondent's inaction on her father's estate and respondent's failure to return her telephone calls.

{¶ 6} Respondent was informed of the pending investigation against him, but he did not respond to relator prior to the time of the filing of the complaint. In addition, on September 21, 1995, respondent had been temporarily suspended from the practice of law for failing to comply with Gov.Bar R. X (attorney continuing legal education requirements). Respondent was reinstated on November 2, 1995.

**{¶ 7}** On November 1, 1996, a panel of the board conducted a hearing with respect to relator's complaint. In a "written stipulation" submitted to the panel by the parties, respondent admitted to failing to handle a legal matter entrusted to him, he agreed to provide restitution to Herman, and he also agreed to undergo a psychological evaluation. Respondent and relator jointly recommended that respondent be given a written reprimand. They also agreed that if respondent did not complete the psychological evaluation and comply with treatment recommended by the psychologist, respondent would be subject to a one-year suspension from the practice of law.

**{¶ 8}** At the hearing, respondent stated that he was a 1973 summa cum laude graduate of Ohio State University School of Law, that he was on the school's law review, and that he was Order of the Coif. Since 1988, respondent has been a sole practitioner. In addition, he works for the Legal Aid Society and he is also a public defender in Mason, Ohio. Respondent testified that he was in the process of going through a divorce and that his health problems adversely affected his practice. Further, respondent testified that he suffers from sleep apnea, that he is a diabetic, and that he has a heart condition.

**{¶ 9}** At the close of the hearing, the panel agreed that respondent should undergo a psychological evaluation and ordered him to submit the results to it. Subsequently, an examination was conducted by a psychologist, who determined that in addition to respondent's other health concerns, respondent also suffered from major depression that "may involve medication and certainly the establishment, development, and maintenance of a psycho-therapy relationship."

**{¶ 10}** Thereafter, the panel submitted findings of fact, conclusions of law, and recommendation to the board. The panel determined that respondent had violated DR 6-101(A)(3) by neglecting a legal matter entrusted to him. The panel recommended that respondent be suspended from the practice of law for one year,

but that his suspension be stayed on the condition that his practice be monitored by relator and that respondent seek and receive psychological treatment.

{¶ 11} The board adopted the findings of fact and conclusions of law of the panel. However, the board disagreed with the panel's recommendation. Instead, the board recommended that respondent be suspended from the practice of law for a period of eighteen months with the final twelve months of that period stayed on the condition that respondent's practice be monitored and that he seek and receive psychological treatment.

———————————

*Michael J. Davis*, for relator.

*James A. Whitaker*, for respondent.

———————————

**DOUGLAS, J.**

{¶ 12} We adopt the board's findings and conclusion that respondent violated DR 6-101(A)(3). Clearly, respondent neglected a legal matter entrusted to him by his client. We are also aware of respondent's previous disciplinary matter concerning his failure to comply with requirements set forth in Gov.Bar R. X. However, after thoroughly considering the evidence in this case, we adopt the panel's recommended sanction, in part, rather than the sanction recommended by the board.

{¶ 13} When imposing a sanction, we will consider not only the duty violated, but the lawyer's mental state, the actual injury caused, and whether mitigating factors exist. See *Dayton Bar Assn. v. Shaman* (1997), 80 Ohio St.3d 196, 201, 685 N.E.2d 518, 521, citing *Cuyahoga Cty. Bar Assn. v. Boychuk* (1997), 79 Ohio St.3d 93, 97, 679 N.E.2d 1081, 1084. In this case, we note respondent's numerous health problems that apparently existed at the time of the misconduct and the fact that he has accepted full responsibility for his inattentiveness to his client's needs. Respondent has shown remorse for his neglectful behavior, he has agreed

to provide full restitution to his client, and he has also agreed to undergo treatment for his depression.

{¶ 14} Accordingly, respondent is hereby suspended from the practice of law for a period of one year, with the suspension stayed on the condition that respondent's practice be monitored by relator for a period of two years and that respondent undergo psychological treatment for his depression. Additionally, prior to discontinuing treatment for his depression, respondent must provide proof to relator by way of a medical statement that treatment is no longer necessary. Costs taxed to respondent.

*Judgment accordingly.*

RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

─────────────────

**MOYER, C.J., dissenting.**

{¶ 15} I respectfully dissent from the sanction imposed by the majority. I would adopt the recommendation of the Board of Commissioners on Grievances and Discipline and suspend respondent for eighteen months with the final twelve months of that period stayed on the condition that respondent's practice be monitored and that he seek and receive psychological treatment.

COOK, J., concurs in the foregoing dissenting opinion.

─────────────────