[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Stenson*, Slip Opinion No. 2014-Ohio-2339.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2339

DAYTON BAR ASSOCIATION *v*. STENSON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Stenson*, Slip Opinion No. 2014-Ohio-2339.]

*Attorneys—Misconduct—Filing frivolous complaint—Dismissing complaint without client's consent—Failing to communicate with client—Failing to act with reasonable diligence—Six-month suspension, all stayed.*

(No. 2013-1308—Submitted October 9, 2013—Decided June 4, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-077.

_____

**Per Curiam**.

{¶ 1} Respondent, David Edmund Stenson of Dayton, Ohio, Attorney Registration No. 0042671, was admitted to the practice of law in Ohio in 1989. In October 2012, relator, Dayton Bar Association, charged Stenson with six violations of the Rules of Professional Conduct for preparing and filing a

frivolous pro se complaint on behalf of a client, dismissing that complaint without the client's informed consent, and neglecting another client's legal matter.

{¶ 2} The parties entered into stipulated findings of fact and misconduct in which Stenson agreed that he had committed the violations alleged in Counts I and V of the complaint and in Counts III and IV "as amended."[1]  Relator agreed to withdraw Counts II and VI of its complaint.

{¶ 3} At the hearing, the panel heard testimony from the two clients affected by Stenson's misconduct, Stenson, and two character witnesses.  Having considered this testimony, the parties' stipulations, the stipulated exhibits, and the exhibits submitted by Stenson, the panel adopted the parties' stipulations of fact and misconduct, permitted relator to withdraw the violations alleged in Counts II and IV of its complaint, and recommended that Stenson be suspended from the practice of law for six months, all stayed on the condition that he refund $2,500 of the fees he received from India R. Huger within 90 days of the order of this court.[2]

{¶ 4} The board adopted the findings of fact, conclusions of law, and recommendation of the panel.  Neither party has objected to the board's report. We adopt the board's findings and recommendation and suspend Stenson from the practice of law for six months, all stayed on the conditions that Stenson refund $2,500 of the fees he received from Huger within 90 days of this order and that he commit no further misconduct.

---

[1] Paragraph 28 of the parties' stipulations actually states that Stenson admits that he committed the violations in Counts III and IV "as amended."  The allegation in Count III that Stenson violated Prof.Cond.R. 8.4(c) was withdrawn, and Stenson stipulated to a violation of Prof.Cond.R. 8(a) instead.  At the hearing, the parties agreed to withdraw the alleged violation of Prof.Cond.R. 8.4(c) in Count IV and to have the panel consider the facts associated with that allegation as part of Counts I and V.  Thus, the panel and board found that relator had agreed to withdraw Count IV.

[2] Neither the panel nor the board disposed of Count VI of the complaint, which relator agreed to withdraw.  Because relator presented no evidence regarding the allegations contained in Count VI, we dismiss it.

**Misconduct**

The Huger Matter—Counts I and III

**{¶ 5}** In May 2008, India R. Huger retained Stenson to represent her in a dispute with a civic organization. She had been disciplined for violating the internal rules and procedures of the organization while serving as a volunteer. Stenson advised Huger to resolve her differences with the organization because he did not believe that a court would afford her the relief she sought. He wrote several letters on her behalf in an attempt to resolve the matter. His efforts were unsuccessful, but Huger continued to request his assistance.

**{¶ 6}** In February 2009, Stenson sent Huger a proposed pro se complaint with a letter, advising her:

> After thoroughly reviewing your causes of action, my office at this time is unable to go any further in representation of you with regard to your issues with the aforementioned [organization].
>
> I've provided you with the research showing that your action has slim chance of being successful. My office cannot go forward based on this research.

**{¶ 7}** Despite having advised Huger that he could not continue with the representation, Stenson revised the proposed pro se complaint at her request. Although that pro se complaint did not comport with Huger's wishes, Stenson filed it in the Montgomery County Court of Common Pleas on Huger's behalf on March 10, 2009. Huger received the answer and scheduling order providing for a telephone status conference. Stenson did not enter a formal appearance in the proceeding, but participated in the telephone conference on Huger's behalf. He

continued to correspond and meet with Huger for several months, primarily to advise her on discovery issues.

**{¶ 8}** The defendant in Huger's case moved for summary judgment and sanctions for frivolous conduct on September 24, 2009. Without obtaining Huger's permission, Stenson voluntarily dismissed her complaint on November 9, 2009. While the dismissal rendered the defendant's motion for summary judgment moot, the motion for sanctions remained pending.

**{¶ 9}** Stenson continued to represent Huger at the hearing on the motion for sanctions and received approximately $5,000 from her during his representation. On February 22, 2010, the court granted the motion and ordered Huger to pay sanctions of $10,400, stating: "To file a lawsuit under these circumstances is unjustified. This conduct is designed to harass the defendants. It lacks evidentiary support."

**{¶ 10}** Stenson admitted that he failed to fully communicate or confirm in writing to Huger the intended scope of or limits on his representation when he signed and filed the pro se complaint on her behalf.[3] He also stipulated that while he believed that there was a strategic advantage to voluntarily dismissing Huger's suit before trial, she did not approve of or consent to this strategy. He acknowledged, and the board agreed, that by signing and filing the voluntary dismissal without Huger's consent, he failed to abide by her decisions concerning the objectives of the representation and whether to settle the matter in violation of Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation, to consult with the client as to means by which they are to be pursued, and to abide by a client's decision whether to settle a matter), and 8.4(a) (prohibiting a lawyer from violating or attempting to violate the Ohio Rules of Professional Conduct).

---

[3] But he did not enforce the limits he attempted to set, as he continued to represent Huger even after he prepared the pro se complaint on her behalf.

**{¶ 11}** We adopt these findings of fact and misconduct.

The Bonner Matter—Count V

**{¶ 12}** In February 2009, Tyronne Bonner, the principal of BSI Security Services in Dayton Ohio, received a notice from the Ohio Department of Public Safety ("ODPS") advising him that the agency intended to revoke or suspend the company's Class C security-guard license. This notice apparently stemmed from BSI's failure to register or renew the registration of certain employees. The notice informed Bonner that BSI had 30 days from mailing date of the notice to request an administrative hearing on the matter.

**{¶ 13}** Bonner hired Stenson to represent the company and provided him with a copy of the ODPS notice. While Stenson requested information about the matter from the agency, he did not submit a timely request for a hearing. Consequently, on May 12, 2009, ODPS issued an order revoking BSI's license.[4] Appeals from the administrative order were unsuccessful because Stenson had failed to timely request a hearing.

**{¶ 14}** Stenson mistakenly believed that the requests he had made to ODPS for additional information extended his time for filing a request for hearing on BSI's behalf. Therefore, he admits that he failed to act with reasonable diligence and promptness in violation of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client). The board adopted these stipulations of fact and misconduct, and so do we.

**Sanction**

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final

---

[4] We note that the order provided that, in lieu of the revocation of its license, BSI could pay a civil penalty of $35,230 within 60 days.

determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 16} The only aggravating factor found by the board was that Stenson engaged in multiple acts of misconduct. *See* BCGD Proc.Reg. 10(B)(1)(d). In mitigation, the board found that Stenson has no prior disciplinary record, did not act with a dishonest motive, exhibited a cooperative attitude toward the disciplinary proceedings, and has a good character and reputation within the Dayton legal community, apart from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).

{¶ 17} Relator recommended that at a minimum, Stenson serve a stayed suspension as a result of his misconduct. Stenson argued that a public reprimand was the proper sanction for his misconduct. But neither party offered any legal authority to support its recommendation.

{¶ 18} The board recommends that Stenson be suspended from the practice of law for six months, all stayed on the condition that he refund $2,500 of the fees he received from Huger within 90 days of this court's order. The basis for the amount of the monetary award to Huger appears to be Stenson's testimony that at the start of the sanction hearing, opposing counsel stated that his fees to date for defending the action were approximately $2,500—at which point, Stenson advised Hager to "stop the bleeding" and negotiate with the organization about her underlying concerns. Because Huger insisted on proceeding with the sanctions hearing—against Stenson's advice—her opponent's attorney fees, and hence the award against her when she lost, amounted to $10,400.

{¶ 19} In support of its recommended sanction, the board cited three cases imposing stayed suspensions of six months and one case imposing a nine-month stayed suspension for misconduct comparable to Stenson's. *See Disciplinary Counsel v. Shuler*, 129 Ohio St.3d 509, 2011-Ohio-4198, 954 N.E.2d 593

(imposing a conditionally stayed six-month suspension for an attorney who neglected two client matters and initially failed to cooperate in the resulting disciplinary investigation); *Cleveland Metro. Bar Assn. v. Thomas*, 125 Ohio St.3d 24, 2010-Ohio-1031, 925 N.E.2d 959 (imposing a six-month conditionally stayed suspension for an attorney who neglected a client's bankruptcy matter, accepted a settlement offer on behalf of a personal-injury client without authority to do so, failed to appear at the final pretrial conference or at the trial after the client refused to sign the release or negotiate the settlement check, and failed to timely advise the client that the court dismissed her case without prejudice); *Cuyahoga Cty. Bar Assn. v. Drain*, 120 Ohio St.3d 288, 2008-Ohio-6141, 898 N.E.2d 580 (imposing a six-month conditionally stayed suspension for an attorney who neglected a client's case by repeatedly missing crucial deadlines and destroying virtually all of the client's prospects for recovery against him for malpractice by canceling his professional liability insurance); *Cleveland Metro. Bar Assn. v. Sherman*, 126 Ohio St.3d 20, 2010-Ohio-2469, 929 N.E.2d 1061 (adopting the parties' consent-to-discipline agreement and imposing a nine-month stayed suspension for an attorney who neglected a client's legal matter, voluntarily dismissed the client's case without her knowledge or consent, and failed to advise another client that he did not maintain professional liability insurance).

{¶ 20} Having considered Stenson's misconduct, the aggravating and mitigating factors present in this case, and sanctions we have imposed for comparable misconduct, we agree with the board's recommendation of the appropriate sanction in this case. Accordingly, David Edmund Stenson is suspended from the practice of law in Ohio for six months, all stayed on the conditions that he refund $2,500 of the fees he received from Huger within 90 days of this order and commit no further misconduct. Costs are taxed to Stenson.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

David P. Mesaros, for relator.

David P. Williamson, for respondent.

_____